IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| | ) | Case No. 14-cv-6553 |
| Plaintiff, | ) | |
| v. | ) ) | Honorable Ruben Castillo |
| COSTCO WHOLESALE CORP., | ) ) | |
| Defendant. | ) | |

**PLAINTIFF EEOC'S MEMORANDUM IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Costco stood by while its customer singled out one of its employees for repeated, pervasive stalking, inappropriate touching, and unwelcome propositions over a thirteen-month period. In the face of Costco's inaction, Dawn Suppo had to go to court to obtain a no-contact order against the customer. In violation of its own written policies, Costco neglected to conduct a timely or adequate investigation and failed to take effective action to prevent the harassment from continuing. Suppo suffered through thirteen months of continuing harassment until she felt too afraid to continue working at Costco. There is sufficient evidence for a jury to find that a hostile work environment existed, that Costco was negligent in responding to the harassment, and that Costco's inaction resulted in Suppo's constructive discharge. This case should proceed to trial.

**FACTUAL BACKGROUND**

Dawn Suppo started working as a permanent Front End Assistant at the Glenview Costco on May 27, 2010. By all accounts, she was a good employee who worked hard and did her job well. EEOC Statement of Fact ¶ 1. Beginning in June 2010, Suppo began receiving unwanted attention from Thad Thompson, a customer she did not know. Thompson was stalking her - watching her and following her around the store. ESOF ¶¶ 7, 16. The first time they spoke, Thompson

1

confronted her about a man he believed she was "flirting" with. He asked her personal questions about where she lived, her age, where she was from, about her nationality, where she worked, and whether she worked anywhere else. ESOF. ¶¶ 8, 9.

The intrusive conduct made Suppo uncomfortable, so she reported it to the person charged with security, Loss Prevention specialist Dinaro Hernandez, in July or August of 2010. Suppo also complained to her supervisor, Front End Manager Don Currier. Suppo told them that Thompson was stalking her, watching her, scaring her, asking her personal questions, hiding behind clothes while wearing dark sunglasses, and making her uncomfortable. *Id.* ¶ 11. Only after Suppo complained three times about Thompson did Costco respond. *Id.* Costco managers Greg West and Currier, as well as Hernandez, then met with Thompson. When confronted, Thompson admitted he told Suppo she looked frightened. *Id.* ¶ 12. Currier told Thompson to minimize his conversation with Suppo, but gave no other direction. West merely told him to avoid making Suppo uncomfortable. *Id.* In response, Thompson told the Costco managers "it's a free country" and he can speak to whomever he wants. After this exchange, Costco admits it did not know if Thompson would agree to leave her alone. *Id.* Costco did nothing further regarding Suppo's complaint - no one told Thompson to not talk to Suppo and there were no limitations on where or when Thompson could shop at Costco. *Id.* ¶¶ 12, 13.

After the meeting, Costco told Suppo only that Thompson did not mean anything by what he had said. *Id.* ¶ 12. Costco never asked Suppo for more information about her complaint. *Id.* ¶¶ 12, 13. Although General Manager Kristin D'Agostino knew Suppo raised a "harassment" complaint in August 2010, there was no investigation. *Id.* ¶ 13. No one interviewed Hernandez or Currier, the initial recipients of Suppo's complaints. *Id.* ¶ 13. No one checked with Suppo to see if things had improved. *Id.* ¶ 13.

After Costco met with Thompson, his harassment of Suppo continued, so she complained again to Currier about the ongoing harassment. Because nothing further was done, Suppo complained to the police in August 2010. ESOF ¶ 14. When Currier and West learned that Suppo went to the police, West was furious at Suppo and yelled at her for reporting Thompson to the police. Despite knowing that Suppo was afraid of Thompson, West insisted that she be friendly to Thompson. After West yelled at her, Suppo was afraid she would be fired. *Id*.¶ 15.

In the months following Costco's one meeting with Thompson in July or August 2010, Thompson's harassment and stalking became more sexual and aggressive. He asked Suppo more personal questions, confronted her about the men she interacted with, and asked if she had a boyfriend. Thompson told her she looked beautiful, exotic, and different. He approached her and she consistently had to walk away from him. He asked, "How old are you? I can't tell if you are 17 or 27?" *Id.*¶ 17. When Suppo declined to answer, Thompson said he had to know, saying parts of her face and body look really young and parts of her look older. *Id.* Despite her repeated refusals, Thompson asked Suppo out on dates approximately six times. He also tried to give her his business card on more than one occasion and asked Suppo for her phone number. *Id.* ¶ 19.

After Suppo went to the police in August 2010, Thompson's behavior also became physical. Thompson twice tried to hug her to the point she had to push him away. He caressed her face, touched her cheek, and commented about her eyes. Thompson touched her wrist and arm and commented about the appearance of her arms. He also bumped his body or his cart into Suppo's body multiple times. *Id.* ¶ 18.

From June 2010 until Suppo stopped working in September 2011, Thompson continued stalking her. He followed her as she moved around the store. Thompson hid behind items and watched Suppo closely. *Id.* ¶ 16. In September 2011, he videotaped her at work. *Id.* ¶ 20.

3

Thompson's behavior toward Suppo was aggressive - he got angry when she refused to engage with him and she worried that he would harm her. ESOF ¶ 21.

From the fall of 2010 until September 2011, Suppo continued to complain to Currier that "this guy is watching me," "I feel uncomfortable," and that Thompson was becoming increasingly aggressive. *Id.* ¶ 22. Currier's only response was that he would watch Thompson. But there is no evidence that Currier did watch him. *Id.* After one incident when Suppo was upset that Thompson was still allowed to shop at the Glenview store, Currier responded that because Thompson did not break any laws, Costco would continue to allow him to shop. *Id.* Suppo's father, Marty Suppo, also complained to Costco management that Thompson was stalking Dawn and that the store was not protecting her. *Id.* ¶¶ 23, 26. Costco management knew Thompson continued to stalk Suppo between August 2010 and September 2011. For example, West admitted that Thompson told him that he stared at Suppo, that he was talking to her, and "I just seem to bump into her." Costco never followed up with Suppo regarding Thompson's admitted contact with her. *Id.* ¶ 25.

After Thompson videotaped Suppo on September 1, 2011, she again complained to Currier that Thompson was sexually harassing and videotaping her. Currier looked for security video footage and when he found none, did nothing more. Suppo called the next day and told Currier again that she felt unsafe. Still, Currier did nothing. *Id.* ¶ 27. Though Currier told her not to, Suppo reported Thompson's stalking to the police a second time. *Id.* When Suppo did not come to work, D'Agostino called her on September 6, 2011. Suppo complained that Thompson was stalking her and that she felt unsafe. *Id.* ¶ 27. D'Agostino claimed she did an investigation; however, she did not interview Thompson, Currier, or West as required by Costco's policies. *Id.* ¶ 29.

Costco knew that Suppo sought and obtained a "no contact" order against Thompson in September 2011. *Id.* ¶ 31. That same month, Thompson called West and was "very upset," stating

4

that Suppo 'is psycho," "I can't help it if I am running into" Suppo, "she is all over the store," and denying that he asked her on a date or gave her his business card. ESOF ¶ 31. At that time, Thompson understood he was still allowed to shop at the Glenview Costco. *Id.* ¶ 31.

Costco did not inform Suppo of any response to her complaint until November 23, 2011, when it told her that Thompson would no longer shop at the Glenview warehouse. ESOF ¶ 31; DSOF ¶ 66. Costco claims its investigation findings were "inconclusive" despite the fact that Thompson admitted some of the conduct Suppo had alleged. ESOF ¶ 32, DSOF ¶ 66. Thompson had also been subject to a "no contact order" by a judge, and Thompson spoke to numerous Costco managers in a "very abusive" and "angry" way. ESOF ¶¶ 31, 33.

**ARGUMENT**

**I. Suppo was Subjected to a Hostile Work Environment Because of Her Sex**

The conduct Suppo was subjected to by Costco constitutes a sexually hostile work environment. Whether conduct rises to the level of actionable harassment "turns on a constellation of factors that include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806-07 (7th Cir. 2000) (further citation omitted). As the Seventh Circuit has noted, "There is no magic number of incidents required to establish a hostile environment." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007) (" A jury reasonably could conclude from [plaintiff's] testimony, which alleged that [the harasser] made at least eighteen sexist or sexual comments in less than a year's time and that similar comments were made 'very often,' that [the harasser's] conduct was pervasive enough to create a hostile work environment"). Thompson's repeated unwelcome propositions, touching, and stalking of Suppo over a period of fourteen months meets this standard.

Thompson stalked Suppo, asked her questions about herself and her relationships, repeatedly asked her out on dates despite her refusals, and touched Suppo without permission. This behavior was pervasive. ESOF ¶¶ 8, 14, 19, 21. Thompson touched her on multiple occasions, making comments about her body and her age. He watched, followed, and stared at Suppo to the point that she went to the police twice and successfully obtained a "no contact" order to prevent Thompson from stalking her. *Id.* ¶ 14, 17, 18, 25, 27.

Stalking can create an actionable hostile work environment under Title VII. *See Frazier v. Delco Electronics Corp.*, 263 F.3d 663, 668 (7th Cir. 2001) ("A jury might find that [the harasser's] persistent, crazy, hostile behavior toward [plaintiff] . . . was sufficiently ominous to make the workplace intolerable even to a person of average steadfastness"); *Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 858 (7th Cir. 1999) ("Of course stalking a female employee crosses the line"); *Savino v. C.P. Hall Co.*, 988 F. Supp. 1171, 1187 (N.D. Ill. 1997) aff'd, 199 F.3d 925 (7th Cir. 1999) ("other conduct reasonably could be perceived as 'crossing the line,' such as . . . his frequent staring and stalking (both on and off the job), and the repeated dinner and lunch invitations, culminating in [the harasser's] act of blocking [plaintiff's] exit from their office while stating 'we'll go out to dinner tonight'"); *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 392 (1st Cir. 2002) (finding a hostile work environment where co-worker stalked plaintiff by engaging "in disturbing and sometimes peculiar behavior around [plaintiff]"). Thompson's threatening and pervasive behavior constitutes unlawful harassment. Defendant cites no cases finding stalking allegations fall below the standard of a hostile working environment.

Defendant ignores the pervasive nature of Thompson's behavior. Costco asks the Court to view each of Thompson's actions in isolation and describes his behavior as "on the benign end of the spectrum." Def.'s Memorandum at p. 8, Docket 81. Defendant's argument relies on cases

6

finding certain isolated actions not to be sufficiently severe, i*d.* at 8-9, even though here EEOC alleges pervasive behavior. However, courts must look at the conduct in its totality. "[I]incidents, which viewed in isolation seem relatively minor, that consistently or systematically burden women throughout their employment are sufficiently pervasive to make out a hostile work environment claim." *Hall v. City of Chicago*, 713 F.3d 325, 332 (7th Cir. 2013); *see also Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 694 (7th Cir. 2001) ("While none of these incidents were particularly severe, they are sufficiently pervasive, and they seem to have unreasonably interfered with her ability to do her job"); *EEOC v. Walsh Const. Co.*, No. 03 c 3601, 2006 WL 2524140, at \*4 (N.D. Ill. Aug. 30, 2006) (refusing to consider harassment incidents that were six months apart separately). Here, Suppo describes a string of continuous and escalating conduct over a period of fourteen months where her harasser subjected her to consistent unwelcome attention whenever he was present, he pursued her more after she rejected and ignored him, and he was increasingly angry that she would not engage with him. ESOF ¶¶ 7, 10, 16-21, 27.

### A. Costco Knew of Continuing Harassment and Stalking

A reasonable jury could find Costco liable for Suppo's hostile work environment. An employer is liable if it "knows or should have known that one of its female employees is being harassed, yet it responds ineffectually." *See Carr v. Allison Gas Turbine Div., Gen. Motors Corp.*, 32 F.3d 1007, 1009 (7th Cir. 1994) (reversing district court's bench trial ruling for defendant). To determine negligence, it is "irrelevant" that Thompson was a customer. ". . . what *does* matter is how the employer handles the problem." *See Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 605 (7th Cir. 2006); *Dunn v. Wash. County Hosp.,* 429 F.3d 689, 693 (7th Cir. 2005).

Suppo put Costco on notice of harassment by complaining in July or August 2010 to Hernandez and Currier that Thompson was harassing her. ESOF ¶ 11. Costco's claim that she did

7

not report anything threatening is without support.[1] Costco's suggestion that it was on notice of only vague, conclusory claims is contradicted by the Suppos' testimony. (Def. Mem. p.12, Docket 81). Suppo told Currier that a man was stalking her, scaring her, watching her, hiding behind clothes, making her very uncomfortable, and asking her many personal questions. ESOF ¶ 11. Suppo also told Currier that Thompson was becoming more and more aggressive. *Id.* ¶ 22. Suppo's allegations do not have to be made with precision to be considered at summary judgment. *See Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1457 (7th Cir. 1994) (allowing sexual harassment claim to proceed despite victim's inability to provide specific comments and dates).[2]

Costco was on notice that the harassment and stalking continued between August 2010 and September 2011. After Thompson's harassment continued and escalated, Suppo complained to Currier multiple times. ESOF ¶ 22. Her father complained to Costco security and management several times, specifically asking Currier and D'Agostino why Costco was allowing the stalking to continue. *Id.* ¶ 23. Thompson told West between August 2010 and September 2011 he was speaking to Suppo and that it might appear Thompson was staring at (but not stalking) Suppo because there is something "unusual" about her looks. Thompson also told West that he "just seem[ed] to bump into her." West admits to receiving this notice from Thompson. ESOF ¶ 25.

---

[1] Costco also claims that it is not liable because Suppo waited a few weeks before reporting her initial complaints. However, Suppo reasonably waited to determine if Thompson's conduct would stop or rise to harassment. Courts recognize that "[s]exual harassment often consists of a series of harassing acts, often minor in themselves, and it may not be apparent to the victim that they add up to harassment until some time after the first act." *Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 857 (7th Cir. 1999); *see also Hardy v. University of Ill. at Chi.*, 328 F.3d 361, 365-66 (7th Cir. 2003) (summary judgment reversed for plaintiff who complained three months after first act of harassment and eight days after the last act).

[2] Defendant's reference to *Lucas v. Chi. Transit Auth.*, 367 F.3d 714 (7th Cir. 2004), is unavailing. In *Lucas*, the court upheld a district court's decision to strike an affidavit, in part, because the employee waived his objections on appeal. *Id.* at 726. Also, unlike *Lucas*, Suppo can definitively place her complaints and allegations within the relevant time period.

8

Finally, Costco argues Suppo should have complained more after her first complaint, but ignores the evidence that Costco deterred Suppo from complaining about Thompson. West screamed at her for notifying the police about Thompson's stalking and told her to be friendly to her harasser. ESOF ¶ 15. Even if a jury were to find that Suppo did not complain after July or August 2010 (which EEOC disputes), a jury could find Costco liable since it discouraged Suppo from making further complaints. *See E.E.O.C. v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 437 (7th Cir. 2012) (upholding jury verdict where employee's decision to not report all incidents of harassment was justified after a harsh reaction to an earlier complaint).

### B. Costco Failed to Properly respond to Thompson's Harassment and Stalking of Suppo

Costco failed to respond effectively to Suppo's complaints. An employer avoids liability only if it takes "*prompt and appropriate* corrective action reasonably likely to prevent harassment from occurring." *Prindle v. TNT Logistics of N. Am.*, 331 F. Supp. 2d 739, 752 (W.D. Wis. 2004) (quoting *Tutman v. WBBM–TV, Inc./CBS, Inc.,* 209 F.3d 1044, 1048 (7th Cir. 2000) (emphasis added)). Costco's only response to Suppo's first three complaints was to meet with Thompson and to tell him to keep his conversations to a minimum and avoid making Suppo uncomfortable in August 2010. ESOF ¶ 12. Thompson responded by telling Costco that he can speak to whomever he wants to and that it's a free country. *Id.* Costco had no basis for concluding that its actions would likely prevent further harassment of Suppo by Thompson.

Although Currier admitted to the police that "something is wrong" with Thompson and Costco had reason to believe that Thompson would not stop stalking Suppo, the only thing Coscto management did in response to Suppo's renewed complaints was to offer to "watch" Thompson. *Id.* ¶¶ 15, 22. But there is no evidence they actually did watch him. DSOF ¶ 44. Costco has failed to produce any evidence that between August 2010 and September 2011, (i) anyone from Costco

9

followed up with Suppo to see if the harassment was continuing; (ii) Costco monitored Thompson to see if he was complying with Costco's request to not make her uncomfortable; (iii) that Costco advised Suppo of ways for her to avoid Thompson; or (iv) that Costco directed Thompson to shop at another store. ESOF ¶¶ 13, 22, 24, 26, 27.

Costco had full authority to revoke Thompson's membership or dictate where it could be used. Indeed, Costco has taken such actions in situations where the police were involved or even when return policies were abused. *Id.* ¶ 6. Thompson claims that in August 2010 and again a year later, he spoke to Costco management and offered to cancel his membership, shop at another Costco warehouse, shop when Suppo was not scheduled to work, or hire a personal shopper. Thompson asserts that all offers were declined and that Costco management specifically asked him to continue shopping at the Glenview warehouse. *Id.* ¶ 26.

Between August 2010 and September 2011, Costco denied numerous requests to make Suppo safer, declining to allow her to park closer to the store entrance or provide her with an escort to her car. *Id.* After August 2010, when Suppo asked why Costco continued to permit her harasser and stalker to shop at her store, Costco management told her that because Thompson had not broken the law, he was still entitled to shop at the Glenview store. *Id.* ¶ 22. By keeping Suppo on the warehouse floor vulnerable to harassment, Costco violated Title VII. *See Fulmore v. Home Depot, U.S.A., Inc.*, No. 1:03 CV 0797 DFH VSS, 2006 WL 839459, at *15 (S.D. Ind. Mar. 30, 2006).

Costco's response to Suppo's complaints about harassment and stalking were ineffective and not calculated to prevent future harassment. First, Suppo and her father, Marty Suppo, both alerted Costco about the continued stalking. ESOF ¶ 22, 23. Second, Thompson admits that he told management about his ongoing confrontations with Suppo. And finally, even Costco management confirmed that Thompson admitted to the continued interactions with Suppo. *Id.* ¶ 25. Yet Costco

10

never escalated its response to the complaints. *See Loughman v. Malnati Org. Inc.,* 395 F.3d 404, 408 (7th Cir. 2005) ("... at some point, the management [] needed to stop merely issuing warnings and start taking disciplinary action"); *Walsh Constr.*, 2006 WL 2524140, at *4 (issue of fact where unmonitored harasser felt free to resume harassment). Between August 2010 and the last day Suppo worked at Costco, September 6, 2011, Costco did nothing else in response to Suppo and her father's continuing complaints.

The cases cited by Costco to justify its lack of response for thirteen months are distinguishable from the instant case. In *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378 (7th Cir. 2012), unlike Costco, the company immediately launched an investigation into the allegations after it received permission from the plaintiff. Three weeks later, the harasser was disciplined, forbidden to engage in contact with the employee, and required to participate in harassment training. *Id.* at 384. In *Fulmore v. Home Depot*, unlike in the instant case, the customer harassment occurred only one time so there was no ongoing harassment to address. 2006 WL 839459, at *16. In *Mink v. Barth Elec. Co.,* unlike in the instant case, the company conducted a timely investigation of the allegations, interviewing all the witnesses involved. 685 F. Supp. 2d 914, 932 (S.D. Ind. 2010). In *Parkins v. Civil Constructors of Illinois, Inc.*, once the supervisor had notice he "immediately launched the investigation . . . [Defendant] then promptly punished the harassers and threatened them with termination, and . . . the harassment ceased." 163 F.3d 1027, 1036 (7th Cir. 1998).

Costco did not conduct an investigation into Suppo's complaints until September 2011, *thirteen months* after her initial complaint. An employer that fails to promptly investigate harassment complaints is negligent. *Mgmt. Hospitality of Racine*, 666 F.3d at 436 (no summary judgment with three month delay); *Mack v. City of Chicago*, 14 C 2943, 2015 WL 6445407, at *4 (N.D. Ill. Oct. 23, 2015) (same with five months). Even if the Court finds Costco's initial response adequate, it was

11

nevertheless negligent in not investigating Suppo's later complaints. *See Curde v. Xytel Corp.*, 912 F. Supp. 335, 341 (N.D. Ill. 1995) (dismissal of summary judgment on harassment claim because employer failed to respond to later complaints, even though more egregious harassment stopped after initial complaint). Costco's delay in telling Suppo it completed the investigation and its findings is equally negligent. *See Mgmt. Hospitality of Racine*, 666 F.3d at 436 (an employer is still negligent if it delays, even if the ultimate response is adequate).

Costco's failure to follow its own investigatory procedures is further evidence of negligence. *See Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 953 (7th Cir. 2005) (quoting *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 188 (4th Cir. 2001) ("'a jury could rationally conclude that, although [Defendant's] institution of an anti-harassment policy represented a reasonable step toward preventing the type of abuse suffered by the [plaintiff], the company unreasonably failed to correct ... offending behavior by neglecting to enforce the policy'")); *see also Walsh*, 2006 WL 2524140, at *5 (no summary judgment because of failure to document initial complaint and not reporting complaints up chain of command even though plaintiff was satisfied with the company's response). Though Costco's policies require an investigation of complaints involving police, allegations of stalking, inappropriate touching or staring, and unwanted solicitation of dates, no investigation was conducted for thirteen months. Costco's policies required a formal investigation, including interviews of all witnesses, use of the Conducting a Workplace Investigation document, and notes of all interviews. Costco failed to follow any of these procedures. In *Mgmt. Hospitality of Racine, Inc.*, the Seventh Circuit found that the company also failed to adequately investigate the complaints made to a manager, finding that "the policy must not only be reasonably effective on paper, but also reasonably effective in practice." 666 F.3d at 435. At a minimum, Costco's procedures required it to follow-up with Suppo after she complained. It did not. A reasonable jury could find Costco was

12

negligent by failing to follow its own policies requiring notice of complaints, and failing to initiate a prompt, formal investigation.

Suppo suffered continued harassment for fourteen months due to Costco's inaction. Courts must consider whether a plaintiff was injured by an employer's delay in responding when determining if a reasonable jury could find the employer negligent. *Prindle v. TNT Logistics of N. Am.*, 331 F. Supp. 2d 739, 752 (W.D. Wis. 2004) (citing *Hostetler,* 218 F.3d at 809). Clearly, Suppo's panic attacks, fear, and inability to work show injury.

Even the investigation that was finally done in September 2011 fell short of being effective. After Suppo complained to Currier on September 1, 2011, about Thompson videotaping her, Currier's only response was to check for security video footage. When Currier found none, he did nothing else. An investigation was only launched after Thompson complained to D'Agostino of mistreatment back in August 2010 and threatened to sue Costco. ESOF ¶ 28. D'Agostino did not use Costco's investigation packet, did not interview the harasser, did not interview witnesses Currier or West (but did request that they email her a written statement), and D'Agostino did not document some the interviews she did conduct. No one ever contacted Hernandez who received Suppo's initial complaint.[3] DSOF ¶ 19; ESOF ¶ 30. Costco waited almost three months after Suppo's last complaint and several weeks after learning of the "no contact" order before telling Suppo that Thompson would no longer shop in Glenview. ESOF ¶ 34. Despite the fact that Thompson admitted to some the conduct Suppo alleged and that Thompson had been aggressive and inappropriate with Costco managers when discussing Suppo, Costco told Suppo that the results of

---

[3] Costco claims Assistant Store Manager Anic and Assistant Vice President Davis helped investigate Suppo's complaints, but they instead say they responded to Thompson's complaints of mistreatment and harassment, as well as his threats to sue Costco.

13

its investigation were "inconclusive." *Id.* Though she complained in July 2010, in November 2011 Costco told Suppo her complaint was not timely. ESOF ¶ 34.

Suppo's problems with Thompson continued. Thompson glimpsed the Suppos shopping at the Mettawa warehouse from afar. In violation of the "no contact" order, Thompson pursued them, screaming at Suppo and her father, who contacted the police again. *Id.* ¶ 36.

## II. Costco Constructively Discharged Suppo By Failing and Refusing to Respond to Her Complaints

The Court must deny summary judgment if a jury could find Suppo's work conditions had become so intolerable that a reasonable person would have felt forced to resign. *See EEOC v. Univ. of Chicago Hospitals*, 276 F.3d 326, 331 (7th Cir. 2002).

Suppo stopped working at Costco on September 6, 2011, when, in the face of Costco's inaction, Suppo no longer felt safe at her workplace. She had complained about Thompson for thirteen months, she had gone to the police twice, and she sought and obtained a "no contact" order from the court. Even after Costco learned about the court order, it delayed almost *three months* before telling Suppo it barred Thompson from the store. ██████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████ A reasonable jury could find a reasonable person who was stalked and employer unresponsive to thirteen months of complaints would have felt forced to resign.

The situation in the instant case is more egregious than the constructive discharge claims that the court found to raise a genuine dispute for a jury in *Curde,* 912 F. Supp. at 341. In *Curde,* even though the employer responded to the plaintiff's initial complaints of physical touching by the harasser (and the touching stopped), the employer failed to reasonably respond to fourteen months

14

of "sporadic, non-sexual conduct of an annoying nature" by the harasser. *Id.* at 337, 340. The employer's offer to move her work station was inadequate because plaintiff's station remained close to her harasser's and she was forced to resign. The court found sufficient evidence for a jury to decide whether the conditions were sufficiently intolerable to show constructive discharge. *Id.*

The cases Costco cites are distinguishable: (i) Suppo, unlike the other plaintiffs, was deemed incapable of working by her doctor as a result of the hostile work environment; (ii) Suppo's August 2010 through September 2011 complaints were not immediately investigated; and (iii) Costco did not conduct a thorough investigation and failed to interviews of key witnesses. In *Cooper-Schut v. Visteon Auto. Sys.*, the plaintiff resigned four days after her last complaint and less than a month after her initial complaint, the employer initiated an investigation the day after her complaint, and conducted a "complete investigation." 361 F.3d 421, 428-29 (7th Cir. 2004). In *McGowan v. Palmer House Hilton Hotel Co.*, the plaintiff was able but did not work, the company took remedial action within a week of the initial complaint, and all witnesses including the harasser were interviewed the same day she complained. 00 C 0733, 2000 WL 1222196, at *2-4 (N.D. Ill. Aug. 24, 2000). In contrast, Suppo endured thirteen months of inaction, contacted the police twice, sought and obtained a "no contact" order, and was prohibited from working by her doctors.[4] Based on the foregoing, there is more than sufficient evidence for a reasonable jury to find that Suppo was constructively discharged.

---

[4] Costco complains Suppo did not give Costco "a chance" to perform its remedial measures because she did not return to work. But, she had no choice - after thirteen months of harassment her doctors determined she was unable to work. Costco also claims that because she took a leave of absence in lieu of formally resigning, she cannot claim constructive discharge. Constructive discharge claims require that an employee stop working and stop earning income, not a formal resignation. Here, Suppo stopped working for and getting paid by Costco and never returned.

**CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment should be denied in its entirety and this case should proceed to trial.


Dated: November 2, 2015                s/ *Richard J. Mrizek*
                                       Richard J. Mrizek
                                       Trial Attorney
                                       Laura R. Feldman
                                       Trial Attorney
                                       Equal Employment Opportunity Commission
                                       500 W. Madison St., Suite 2000
                                       Chicago IL, 60661
                                       312-869-8117
                                       richard.mrizek@eeoc.gov

**CERTIFICATE OF SERVICE**

  I, Richard J. Mrizek, an attorney, certify that I caused the PLAINTIFF EEOC'S ADDITIONAL FACTS IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT MOTION UNDER LOCAL RULE 56.1, to be served on counsel for Defendant via CM/ECF and electronic mail on November 2, 2015, at the addresses listed below.

Gerald L. Pauling II<br>
Erin Dougherty Foley<br>
SEYFARTH SHAW LLP<br>
131 South Dearborn Street<br>
Suite 2400<br>
Chicago, Illinois 60603<br>
<br>
<br>
s/ <u>*Richard J. Mrizek*</u><br>
Richard J. Mrizek<br>
Trial Attorney<br>
Laura R. Feldman<br>
Trial Attorney<br>
Equal Employment Opportunity Commission<br>
500 W. Madison St., Suite 2000<br>
Chicago IL, 60661<br>
312-869-8117<br>
richard.mrizek@eeoc.gov